UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO.
3:07CV411-J

DENNIS HUIZAR, SR.                                                                              PLAINTIFF

VS.

MICHAEL J. ASTRUE,
    Commissioner of Social Security                                                DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Dennis Huizar ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

On December 8, 2003, Claimant filed application for disability insurance benefits, alleging that he became disabled as of June 30, 2005. After a hearing, Administrative Law Judge Reynolds ("ALJ") determined that claimant's chronic neck and low back pain secondary to degenerative disc disease of the lumbar and cervical spine, status post lumbar surgery x2, status post right ankle ligament surgery, right carpal tunnel release, right shoulder arthroscopic repair, borderline intellectual functioning, major depression, anxiety, history of alcohol and marijuana abuse, and personality disorder were severe impairments that prevented him from returning to any past relevant work. The ALJ further found that claimant retained the residual functional capacity for a significant number of jobs. This became the final decision of the Defendant when the Appeals Council denied

1

review on June 5, 2007.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

Both of plaintiff's arguments here involve claims that substantial evidence fails to support the ALJ's assessment of her residual functional capacity. Residual functional capacity (RFC) is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). RFC is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his or her RFC, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

Plaintiff argues that substantial evidence fails to support the omission from the RFC of any limitations arising from his upper body impairments (neck, shoulder and wrist). Part of his argument is that the very act of determining an impairment to be "severe" necessarily implies that there are functional limitations that should be included in an RFC. There is no authority supporting this

suggestion; indeed, at Step 3 – following *after* the Step 2 identification of severe impairments – the question is whether disabling limitations result from the impairments "singly or in combination." Thus, the mere act of designating an impairment as "severe" does not require that it be included in the RFC.

Instead, the operative question for this review is whether the ALJ took into consideration any functional limitations established by the medical evidence. Dr. Gill, an examining consultant, found no limitation whatsoever in the upper extremities: Plaintiff had full and unlimited range of motion in shoulders, elbows and hands, and grip strength of five out of a possible five bilaterally. Neck range of motion was somewhat limited.[1] Tr. 321. Dr. Gill opined that Mr. Huizar could do sedentary activity "especially desk work or that uses the HEENT faculties and to some extent even the upper extremity use, but nothing overtly physical." Tr. 322.

Mr. Huizar does not point to any medical evidence showing functional limitations in use of his upper extremities, nor does he point to any basis for arguing that slight cervical range of motion restriction would exclude sedentary work. His daily activities do not suggest upper body functional limitations. The ALJ noted his ability to go deer hunting and his role of taking care of the home and children while his wife works outside the home. Tr. 40. The Court finds no error.

Mr. Huizar also contends that his mental limitations are more extensive than found by the ALJ. The ALJ limited him to "entry level work with simple 1-2-3 step procedures, no frequent changes in work routine, no requirement for problem solving, independent planning, setting of goals, advanced literacy or frequent interaction with co-workers, supervisors or the general public." Tr.

---

[1] For example, normal rotation is 80 degrees, while Mr. Huizar's was 60 degrees. Lateral flexion was 45 degrees, which is normal,

38.

Claimant argues that the ALJ failed to accord the proper weight to the opinions of his treating physicians. Specifically, he argues that his Global Assessment of Functioning (GAF) scores of 50 to 55 are incompatible with the degree of limitation found by the ALJ. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that, "occupational functioning" is but one of three fields considering in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result

in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

The United States Court of Appeals has rejected suggestions that an ALJ commits error by declining to view a GAF score as establishing disability. Pointing out that it had "affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower," the Sixth Circuit recently cautioned that the GAF may have little or no bearing on the claimant's social and occupational functioning. DeBoard v. Commissioner, 211 Fed.Appx. 411, 415 (2006).

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics. It necessarily follows that where there is specific information available, vacation of a decision solely on the basis of a GAF number is inappropriate.

Again, the operative question is whether the medical evidence shows specific functional limitations that are not included in the RFC. Mr. Huizar argues that excluding jobs calling for "advanced literacy" is insufficient, in that he is unable to read at all. The record does not support this claim. Dr. Miller, a licensed psychologist, performed an examination on February 28, 2004, and recorded a Full Scale IQ of 76, which is in the borderline or slow learning range. Tr. 312. Dr. Miller determined that plaintiff functions on a second to third grade level in all skills; specifically as to reading, Mr. Huizar scored at Grade 2.8. Tr. 313. In light of the traditional notion that third grade marks the move from basic to advanced literacy, the Court is unable to fault the ALJ's determination that jobs should exclude any requirement of advanced literacy.

Finally, plaintiff contends that his mental limitations arising from depression, post-traumatic

stress disorder, and personality disorder are more severe than those found by the ALJ. The Court reiterates that diagnosis does not equate with limitation; the existence of a diagnosis cannot establish disability. Rather, the claimant bears the burden of pointing to functional limitations arising from that diagnosis, limitations that prevent the performance of work activity. While it is true that the records show consistent psychiatric diagnoses and regular treatment over a several year period, the records also demonstrate that Mr. Huizar has responded to that treatment favorably. He does not exhibit psychotic symptoms. Plaintiff has not identified any explicit treating physician opinion that was disregarded. While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.

      The Court sees no error and concludes that substantial evidence supports the decision of the Commissioner. An order in conformity has this day entered.